**W.L. MENG, et al., Appellants,**

v.

**Bernard L. SCHWARTZ, et al., Appellees.**

**No. 01–5275.**

United States Court of Appeals, District of Columbia Circuit.

Oct. 7, 2002.

Before SENTELLE and RANDOLPH, Circuit Judges, and SILBERMAN, Senior Judge.

*JUDGMENT*

PER CURIAM.

This appeal was considered on the record from the United States District Court for the District of Columbia and the briefs filed by the parties. It is

ORDERED and ADJUDGED that the judgment of the district court be affirmed for the reasons set forth in the attached memorandum.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R.App. P. 41(b); D.C.Cir. Rule 41.

*MEMORANDUM*

### I. Background

The Plaintiff–Appellants, Loral Corporation shareholders, brought a civil RICO claim against Appellee Schwartz and a number of federal officers, including former President Clinton, and other members of his administration, claiming that a series of campaign contributions made by Schwartz to various Democratic political fund-raising bodies were unlawful bribes, because Schwartz received quid pro quo benefits for these contributions. The injury claimed by the Loral shareholders stems from a $100,000 contribution Schwartz made to the DNC in June 1994, which the plaintiffs allege garnered him a seat on a United States Department of Commerce trade mission to China in 1994. Plaintiffs alleged that during this trip, Schwartz held several meetings with Chinese government and business leaders, which allowed Schwartz to negotiate con-

tracts to launch Loral's satellites from China.

On February 15, 1996, a Chinese rocket carrying a Loral satellite crashed midflight. Appellants alleged that subsequently, Loral engineers took part in meetings with the Chinese company that undertook the launch, and that these meetings led to the unlawful release of sensitive technology information. In 1997, the Justice Department began a federal grand jury investigation of Loral's alleged release of information to the Chinese following the crash. Both Houses of Congress also established committees to investigate the scandal known as "Chinagate." In May 1998, a separate Department of Justice investigation was launched to determine whether there was a link between Schwartz's political contributions and the granting of waivers by the White House. These investigations resulted in a report which was widely disseminated to the public, which suggested Loral had acted improperly in some respects.

Appellants also allege that the series of donations Schwartz made to Democratic entities, totaling more than $1,460,000, resulted in waivers for satellite launches, granted by President Clinton, several times in 1996. Finally, they allege that Schwartz, when Loral merged in part with Lockheed Martin, negotiated a bonus for himself which he used as reimbursement for the contributions and to make more contributions, an action which Appellants characterize as "laundering." The Appellants claim that the contributions to the Democratic funds were bribes, and claim the resulting injury was the harm to Loral's good name and business reputation, harm to Loral's business interests and the wasting of corporate assets, as well as financial loss to the corporation through the bonus negotiation and subsequent reimbursement.

Defendant–Appellees filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), and the district court granted this motion on September 25, 2000, dismissing the sole federal claim presented by the Plaintiff–Appellants. The district court declined to exercise supplemental jurisdiction over the Plaintiffs' state law claims. On July 9, 2001, the district court denied Plaintiffs' motion to alter or amend their complaint, or in the alternative for relief from its judgment. Plaintiff–Appellants timely filed their appeal on August 7, 2001.

## II.   Discussion

Upon review, we affirm the decision below substantially for the reasons offered by the district court. The majority of damages claimed by Appellants were not proximately caused by the Appellee's conduct, as required by RICO, 18 U.S.C. § 1964 (West 2000). However, because the district court did not specifically address the bonus issue raised by the Appellants—that Loral was harmed due to Appellee Schwartz's misappropriation of corporate funds by Schwartz's conduct in regard to the bonus he negotiated for himself-we add this brief opinion. The district court's rationale for dismissing the Appellants' claims was the lack of proximate causation between Schwartz's alleged conduct and the harms suffered by Loral Corporation. This rationale may not adequately dispose of the bonus issue, because the financial loss to the corporation may have been proximately caused by Schwartz's negotiation and reimbursement.

However, regardless of whether Schwartz's conduct was the proximate cause of this harm, this issue is foreclosed by the prior shareholder derivative litigation in the New York state courts. *Silverman v. Schwartz*, No. 102623/96, slip op.

(N.Y.Sup.Ct. Mar. 4, 1997), *aff'd,* 248 A.D.2d 332, 670 N.Y.S.2d 95 (App.Div. 1998). Because this issue was clearly and completely disposed of by the New York court, under the doctrine of collateral estoppel, the Appellants may not re-litigate that issue. *See Yamaha Corp. of Am. v. United States,* 961 F.2d 245 (D.C.Cir.1992).

Therefore, because the damages claim flowing from the bonus issue is collaterally estopped, we need not address the issue of whether those damages were proximately caused by Schwartz's conduct.